The next case, number 23-1005, Michael Marullo v. Amica Mutual Insurance Company. At this time, if counsel for the appellant would please come to the podium and introduce himself on the record to begin. Good morning, Your Honors. May it please the Court, Kevin McCullough for the appellant, Michael Marullo. With the Court's permission, I'd like to reserve two minutes of my time for rebuttal, please. You may. The appellant seeks reversal of the trial court's ruling that the 2016 Standard Automobile Insurance Policy excludes third-party inherent diminished value damages. In the trial court's memorandum and decision, dated December 5, 2022, by Judge Kasper, she inaccurately analyzed and intertwined first-party and third-party claimants, along with optional and compulsory coverages within that insurance contract. The issue in the matter before this Court concerns the contract and the terms, as well as the breadth of the coverage within Part 4 of the 2016 edition of the policy, as it relates to recoverable tort damages and tort victims. Part 4 determines the tort damages recoverable by the tort victims, while at the same time determines what the actual coverages for that first party, in short, what the duties are to defend and indemnify. That contract language of Part 4 provides coverage that all tort damages suffered by a tort victim that are recoverable by way of judgment or settlement are covered under the policy. Well, it doesn't quite say that. It doesn't say all tort damages, does it? What it specifically states, Your Honor, is that the amount we will pay is the amount the owner of the property is legally entitled to collect through a court judgment or settlement for the damaged property. We're talking about property damage liability insurance. Yes. So the starting point would seem to be, wouldn't it, that we need to define what the regulations mean by property damage liability insurance. That's correct, Your Honor. And the statute says that it means insurance containing provisions as provided in this section, being Section 34.0 or 0, among other provisions, including conditions, exclusions, and limitations as the commissioner of insurance may approve. As I understand it, the commissioner of insurance approved a limitation here that it doesn't include what you want it to include. Judge, the starting point is from the 2008 edition of the policy, which has the sentence that I just read with cases. We're talking about the provision now that approved by the commissioner seems not to cover what you want. So don't you have to argue that the commissioner, like, couldn't have approved that policy form? I disagree, Your Honor. The sentence that was added to the 2016 policy that was not in the 2008 policy relates to first-party coverage. AMICA argued at the underlying hearing, and it was cited within Judge Casper's memorandum, that the case, the issue that necessitated the change that we're talking about today, was a lawsuit filed by Big Wheel Truck Sales Inc. versus Safety. And in that situation, there was a lawsuit filed seeking towing coverage, which is first-party coverage, under Part 4 of the policy, which is compulsory third-party coverage. The appeals court held in that case that the goal of Part 4 coverage is to protect the insured from the claims of injury or damage to others, but not to insure against economic loss for the insured. That was part of the change to the 2016 policy, the sentence that we're addressing with this case, Your Honor. The case, the sentence, and I do want to read it for the court, because what we're disputing over here is this sentence. The amount we will pay does not include compensation for physical damage to, or towing, or recovery of your auto or other auto used by you or a household member with the consent of the owner, or any decreased value or intangible loss claimed to result from the property damage unless otherwise required by law. The wording in that sentence is directed to first-party claims. Your auto is defined within the policy. Other auto used by you or a household member is defined in the household policy. And what the appellant is arguing here in this case to this court is that that sentence was added for two reasons. One, to prevent towing lawsuits for seeking towing coverage, which is under a different line of coverage, from being filed under Part 4, getting creative with the definition of property damage. And this sentence is also included to prevent the extension of the Givens v. Commerce insurance case, which was an earlier decided case that held first-party coverage under Part 7 does not extend to inherent diminished value. Part 4 is a completely different coverage, a compulsory coverage. The AMICA policyholder and every motor vehicle owner with insurance is required to have Part 4 coverage. The intent of Part 4 coverage is to protect, defend, and identify the insured and policyholder for at-fault losses and to provide recoverable damages to third-party victims. The language within Part 4 on the first part of the language is exactly the language that the SJC in the McGill case found did provide coverage for diminished value damages. After the McGill case, the SJC, that's when the policy language changed. So shouldn't that be controlling then? Actually, Your Honor, the policy language changed approximately four years before McGill was even decided. But it was a different policy language. It is a different policy language. And my argument to this Court is that the change in the policy language was not inserted to prevent a third-party tort victim from recovering a tort damage. It was in place to prevent first-party claimants from finding ways to get coverage under Part 4, i.e., the big... So you're saying third-party claimants get more under the policy than first-party claimants? Exactly. That's exactly what Part 4 coverage is. There's no coverage for a first-party insured under Part 4. And that's literally the basis for that language, Judge, was to make sure that door is closed. And what's your basis for saying that? Because you're seeking coverage under Part 4. Correct. All right. And the broader sentences start out, so your problem is the very last sentence of Part 4, which says that it won't cover decreased value or intangible loss resulted from the property damage. You want us to read that last clause as limited to basically the auto and liability of the insured, the named insured, the first party. Exactly, Your Honor. Exactly. And you said that's intended. What is the basis for you saying that that is the reason that clause was put in there was just to protect the insurer from first-party claims? Because the preceding language when it refers to we will not cover damage to your auto is referring to the insured, the first-party insured, or other auto used by you or a household member, which by definition at the front portion of the policy is first-party coverage. There's no mention in that sentence of limiting or precluding third-party recovery of tort damages. That entire sentence relates to your auto and other auto used by you or a household member. So the sentence says they're not going to pay compensation for physical damage to, including towing or recovery, your auto or another auto used by you or a household member, comma, or any decreased value or intangible loss. You want us to read into that after the comma the same limitation, which is to your auto. I do, Your Honor, and I think that that's supported with the fact that the previous sentence is identical from the 2008 policy when it talks about what will be paid. We will pay any amount the owner or any amount collectible through a court judgment or settlement or property damage. What's interesting about Amika's argument here is that – I'm sorry, Mr. Brieff – that we should read that last clause as referring only to the auto of the named insured. It certainly was, Your Honor. That sentence that was added to the 2016 policy, as I've mentioned, is specifically attempting to limit first-party claims from being presented under Part IV of the policy, and Amika has every right to do that. Part IV is covering damages to third-party tort victims. But what's important, Judge, with that additional sentence is that, yes, Amika is saying, and the automobile insurance industry is saying, we're not going to pay for a decreased loss of tangible value to your vehicle as a result of the property damage. That's referring to a first-party claim, which is consistent with Commerce v. Givens. You cannot get diminished value damages under the MAS auto policy as a first-party claim. It's only recoverable as a third-party claim through tort. It's a tort damage, and diminished value is now a recognized tort damage. It can be calculated. I think we have your argument, and you've run out of time. But you have some rebuttal. Yes, please. Thank you. Thank you, Counsel. At this time, Counsel for the Apple, he would introduce himself on the record to begin. Good afternoon. May it please the Court, Chris Riley for Amika Mutual Insurance Company. Your Honors, that argument was not raised in the brief. It was raised below, and it was addressed by Judge Kasper, but it was not in the brief before the Court. The language that they're referring to, as the Court pointed out, it's talking about two things. It says, the amount we will pay does not include compensation for physical damage to or towing or recovery of your auto or other auto used by you or a household member with consent of the owner, comma, or, separated by a comma and an or, any amount, any decreased value or intangible loss claimed to result from the property damage unless otherwise required by law. So what that sentence is doing is it's identifying two categories that will not be paid for. If you look at Judge Kasper's decision, she addresses the need to have that first clause. There were first party claimants who were seeking coverage under Part 4 of the 2008 policy for towing their own vehicle. And that's the Big Wheel Truck Sales, Inc. for Safety Insurance Company. It's cited in Judge Kasper's brief, 2017 Westlaw 1135944. And that's why the Commissioner put this language regarding towing of first party vehicles within Part 4 of the standard auto policy. Because insureds were making claims for towing of their own vehicle underneath that policy. Then it says, comma, or, the decreased value or intangible loss. That is not addressing first party claims for IDV damages. It's addressing third party claims for IDV damages. And as counsel acknowledged, in the given case, it was already decided that there's not IDV coverage for first party claims. That's addressed in Part 7 of the policy. So the idea that there's a redundant exclusion in Part 7 and Part 4 for the IDV claims, it wouldn't make any sense as a factual matter. But again, that argument was raised below. It's addressed by Judge Kasper. It was not set forth in the brief before the Court, and that's why the Court might not have been aware of it. This does happen a lot, these claims. If we find it's not waived here, we're going to have another case that's going to come up potentially with your insured. Let's assume that it isn't raised in the brief. You just made the point on the provenance of these two parts of that sentence and the purpose of them. Is there any other argument that you raised below? I think the key arguments were just the grammatical, it's a matter of grammar, and then the fact that that exclusion for first party IDV damages is addressed in a separate part of the policy. If any other memory pops up in my mind here as I'm going along, I'll make sure to mention it to the Court, but I think those were the two big cases. And again, the big wheels case, which explains why there's this sentence in Part 4 about potential first party towing. On the language of the policy, it's very clear. And actually, this is another point on that prior issue. The first sentence of Part 4 is different in the 2016 policy than the 2008 policy. And in the 2016 policy, the first sentence says we will pay for damage or destruction of the tangible property of others. That's another attempt by the Commissioner of Insurance to say I'm limiting this to tangible damage, not inherent damage, not intangible damage. So even if you were to accept this argument about the final sentence relating to first party claims, there's another part of Part 4 of the Commissioner's standard auto policy which limits the coverage. It does seem a bit puzzling, and I'm not sure I understand why, that Massachusetts, if we accept the ruling below, has reached a position where the driver of the car who causes the accident to the victim, the plaintiff's car, is liable. The damages that that person is liable for include this element. And so you would think you could get insurance that would cover your liability. That's what you want liability insurance for. You want it to match what your liability is. Are there alternative forms that cover the insured, or is every driver in Massachusetts bare when it comes to these IDV damages? Well, under the 2016 standard policy, Your Honor, they would be limited to what the Commissioner approved as the policy. My understanding is that there are now options. I think it was 2017 or 2018 insurers are permitted to have variations in their policy as long as their own policies are approved by the Commissioner. But as of 2016, the policy that was approved by the Commissioner, this is the coverage that's provided. Whether they could get, you know, additional personal umbrella liability policies, there might be other policies out there. So the Commissioner approved a gap in coverage for every insured in Massachusetts? No, I think it's more, you know, the Commissioner also has a number of other exclusions in here for if you're driving an Uber or if you're, you know, operating someone else's vehicle. And there's also limits on the coverage that's provided. In fact, you only have up to the limit of insurance. So it's not a gap so much as like any other insurance, there are things that are covered and not covered. A homeowner's insurance, for instance. You have a policy that says it's an all-risk policy. Well, what that's really saying is we cover all risks, but then there's certain things that are excluded. And here the Commissioner was within his authority under Section 34-0 by the plain language of the statute to include those exclusions, limitations, and conditions. And there's certainly the plain language of the statute gives the Commissioner that authority. So without a finding that there was some violation of the duty prescribed to the Commissioner by the legislature, this is not amicus policy that it's drafted. It's just abiding by the language of the Commissioner. Do you know of any other pending litigation in Massachusetts state or federal courts on this issue of IDV insurance coverage? Yes, and it's a case that's briefed before Your Honors. It's the Reese v. Progressive case. It wasn't mentioned in the appellate brief. It wasn't mentioned, but the timing must have come after your briefs. No, it didn't, Your Honors, about a month before the brief was due. But in that case, Judge Burroughs came to the same decision as Judge Casper and said that the language of the policy is clear. The Commissioner was granted the authority to make that decision based on the statute. It was well within the Commissioner's grant of authority, and therefore, there's no coverage for the IDV. And likewise, dismissed, there's I think five or six claims for violation of 93A here. Is there any litigation in the state courts on this issue that you know of? I'm not aware of any, Your Honor, but that's not to say there isn't. I think I see a shaking head behind you. I wouldn't be surprised if he's well aware of some of the litigation in the state court. But I'm not aware of any on this specific coverage issue. Again, not to say that there isn't one out there. I'm just not involved in one. Is there anything else you wanted to add? No, Your Honors. If the Court has no further questions, I'll rest on the papers. Thank you. Thank you, Counsel. At this time, if Attorney McCullough would just reintroduce himself on the record, he has a two-minute rebuttal. Attorney McCullough for the Appellant. Judge, there is a state court matter pending in Suffolk Superior Court, and in fact, there was a motion to consolidate this matter, the Murillo matter, with the Reese matter. That motion to consolidate was denied. The expectation was to direct the consolidated cases to the SJC with a special question. That's essentially what happened with the fight over the 2008 policy language. So you're asking us that both cases before the Court of Appeals, this case and the other case, should be certified to the Massachusetts Supreme Court? That's an option. Is that what you were just telling us, that you were thinking about doing that? We were thinking about doing that, but when the motion to consolidate was denied, that no longer was an option. So there is a case pending in Suffolk that is like this case. The two of them were in Suffolk at the same time, then this one got removed? Is that what you're saying? Yes, Judge. Okay, but the other one wasn't removed? That's correct. Could you send us a 28-J letter giving us the citation to the case that's pending in Suffolk? And to be clear, there is a case with this identical issue pending before this Court, which I think will be heard next month. Judge, I want to... And do you know the name of that case? Reese v. Progressive Insurance. Okay, I know it's already mentioned. From Judge Burroughs. And you're the attorney for Reese in that case, am I correct? Yes, Your Honor. Okay. So you're the one who requested consolidation? I didn't. It was requested by my brother, and we did not oppose it. Okay. Judge, the sentence that was added to the 2016 policy, nowhere within that sentence does it state, reference, address third-party claimants. It says what it says, but there's nothing in there addressing third-party claimants. It mentions intangible value and decreased value, but again, it doesn't address third-party damages. And that sentence starts out with first-party coverage. But you read it as third-party coverage, Part 4. That's correct. That's correct. And the end of that sentence says, unless otherwise required by law. We're not sure what that means, but your question to my brother a moment ago is critical because it goes to the practical enforcement of the situation. You're running out of time, and we understand the gap that's created under at least the 2016 version of the policy. With compulsory coverage with no coverage. For that element, for IDV. Yes, Judge. Thank you. Thank you.